THE CITY OF JOLIET *et al.*,

*v.*

HENRY ALEXANDER.

194    457
j207   ²510
194    457
d210   297

*Opinion filed February 21, 1902.*

1. MUNICIPAL CORPORATIONS—*right of action against city not essential to constitute a debt.* It is not essential that there should be a right of action against a city upon certificates issued by it in order that they may constitute an indebtedness, if the city's money or property can be taken from it to pay such certificates.

2. SAME—*extension of water-works under the act of 1899 creates a debt.* The extension by a city of its system of water-works, under the act of 1899, by an ordinance providing that all income from the system shall constitute a water fund, to be used exclusively to meet the expenses of the system and to pay the extension certificates, which certificates were secured by mortgage on the property constituting the entire water system, creates a debt which a tax-payer may enjoin where the city's debt has already reached the constitutional limit.

3. SAME—*when indebtedness is created although obligations are payable out of special fund.* The issuing of obligations payable out of a particular fund creates an indebtedness, within the meaning of the constitution, if the fund is an existing, established income belonging to the city, which it thereby loses to pay the obligations.

4. PRACTICE—*in chancery—court need not make finding of matters of law.* The court, in a decree, need find only the facts, and pronounce such decree thereon as the law may require, and a finding that a statute involved in the case is unconstitutional, and therefore void, is not necessary.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

LOUIS LAGGER, and WOOD & OAKLEY, for appellants:

The issuing of obligations payable out of a particular fund, and for which the fund only, and not the city, is liable, does not create such an indebtedness as would fall within the inhibition of the constitutional limitation upon municipal indebtedness. *Winston* v. *Spokane,* 41 Pac. Rep. 888; *Faulkner* v. *Seattle,* 53 id. 365; *Strieb* v. *Cox,* 111 Ind. 299; 9 West. Rep. 849; *Quill* v. *Indianapolis,* 124 Ind.

292; 7 L. R. A. 681; *State* v. *Hawes,* 112 Ind. 323; 11 West. Rep. 845; *Baker* v. *Seattle,* 2 Wash. 292; *Railway Co.* v. *Jacksonville,* 114 Ill. 567.

A debt is a legal, equitable or moral obligation to pay a sum of money to another, who occupies the relation of a creditor, and who has a legal or moral right to make the debtor pay. *State* v. *Hawes,* 112 Ind. 323; 11 West. Rep. 845; *Burnham* v. *Milwaukee,* 73 N. W. Rep. 1018.

A debt is an obligation arising out of a contract, express or implied, which entitles the holder thereof immediately to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay without regard to any future contingency. *Quill* v. *Indianapolis,* 124 Ind. 292; 7 L. R. A. 683.

In proceeding to construct or enlarge a water-works system with the object, in addition to other purposes, of obtaining a profit therefrom, a city is exercising a purely business or proprietary power. *Wagner* v. *Rock Island,* 146 Ill. 139; *Pike's Peak Power Co.* v. *Colorado Springs,* 105 Fed. Rep. 11; *Bank* v. *Arkansas City,* 86 id. 271; 34 L. R. A. 518.

Warrants drawn in anticipation of taxes levied but not collected, create no debt to the city. *Springfield* v. *Edwards,* 84 Ill. 626; *Comrs. of Highways* v. *Jackson,* 165 id. 23; *Law* v. *People,* 87 id. 385; *Fuller* v. *Heath,* 89 id. 296.

HILL, HAVEN & HILL, for appellee:

By section 12, article 9, of the constitution of 1870, cities are prohibited from becoming indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness. *Chicago* v. *McDonald,* 176 Ill. 407; *Springfield* v. *Edwards,* 84 id. 633; *Law* v. *People,* 87 id. 392; *Prince* v. *Quincy,* 105 id. 138; 128 id. 443; *Litchfield* v. *Ballou,* 114 U. S. 132; *Doon Township* v. *Cummins,* 142 id. 366; *Buchanan* v. *Litchfield,* 102 id. 278.

The indebtedness there prohibited is of any kind or character, or for any purpose, and includes both that arising upon express or implied contracts. *Springfield* v. *Edwards,* 84 Ill. 633; *Law* v. *People,* 87 id. 385; *Chicago* v. *McDonald,* 176 id. 407; *Doon Township* v. *Cummins,* 142 U. S. 366; *Litchfield* v. *Ballou,* 114 id. 132; *Earles* v. *Wells,* 68 N.W. Rep. 964; *Chicago* v. *Galpin,* 183 Ill. 405.

The fact that the debt is payable out of a special fund or asset of the municipality does not avoid the restriction of the constitution imposed by section 12, article 9. *Newell* v. *People,* 7 N. Y. 19; *Brown* v. *Corry,* 175 Pa. St. 528; *Mayor* v. *Gill,* 31 Md. 375; *Ironwood Water Works* v. *Trebilcock,* 99 Mich. 454; *Kelly* v. *Minneapolis,* 65 N. W. Rep. 117; *Prince* v. *Quincy,* 128 Ill. 453; *Hodges* v. *Crowley,* 186 id. 305; *Browne* v. *Boston,* 60 N. E. Rep. 934.

A city having an aggregate indebtedness exceeding the constitutional limitation of five per cent is powerless to create any additional debt, even for its ordinary and current expenses, and no contract for the payment of money made while the city is so situated is good. *Chicago* v. *McDonald,* 176 Ill. 405; *Chicago* v. *Galpin,* 183 id. 405.

Bonds or certificates issued, payable out of funds raised by assessment on property benefited, have been held not within the constitutional restriction by the courts of some States; but in every case it has been held there must be no liability or obligation on the part of the city to pay them, or any part thereof, out of its own funds. *Fowler* v. *Superior,* 54 N. W. Rep. 800; *Kelly* v. *Minneapolis,* 65 id. 115; *O'Malley* v. *Olyphant,* 48 Atl. Rep. 483; *Quill* v. *Indianapolis,* 124 Ind. 292; 7 L. R. A. 483; *Railway Co.* v. *Jacksonville,* 114 Ill. 567.

Every tax-payer has the right to enjoin the municipality in which he is liable to taxation, from incurring an illegal debt or from issuing evidences of such debts. *Wright* v. *Bishop,* 88 Ill. 302; *Springfield* v. *Edwards,* 84 id. 626; *Stevens* v. *St. Mary's Training School,* 144 id. 346; *Chicago* v. *Nichols,* 177 id. 104.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Joliet owns and operates a system of water-works for the purpose of supplying the city and its inhabitants with water, and derives therefrom a net annual income of about $10,000. The city is indebted largely in excess of five per centum of the value of the taxable property therein. On January 7, 1901, an ordinance of said city was passed providing for the extension and enlargement of the existing system of water-works, for which water fund certificates were to be issued to an amount not exceeding $240,000, bearing interest at a rate not exceeding six per cent per annum, to be paid as provided by an act of the legislature entitled "An act authorizing cities, towns and villages to build, purchase or extend water-works systems for public and domestic use, and to provide for the cost thereof," in force July 1, 1899. (Laws of 1899, p. 104.) The ordinance provides that the entire proceeds of the water-works system shall be paid into a water fund; that no money shall be paid out of said fund except for the necessary operating expenses of the water-works system and the payment of the certificates and interest until they are fully paid; that the certificates shall be secured by a mortgage or deed of trust on the water-works system and appurtenances now owned by the city, and also the extensions constructed under the ordinance, together with all the lands, buildings, machinery and appurtenances of every kind in connection therewith. The city being about to proceed, under the ordinance, to contract for the extension provided for, and to issue, sell and deliver water fund certificates to the amount of $240,000, and to secure the same by mortgage or deed of trust on the water-works system, as provided in the ordinance, the appellee, a resident and tax-payer of the city, filed his bill in this case in the circuit court of Will county against the appellants, the city of Joliet and the mayor and city

clerk thereof, to restrain them from entering into such contract and executing and delivering said water certificates and the mortgage or deed of trust securing the same. The foregoing facts were alleged in the bill and admitted by general demurrer of the defendants. The demurrer was overruled and the defendants elected to stand by it. The bill was then taken for confessed, and a decree was entered in accordance with its prayer.

The question to be decided is, whether the execution of a contract and the issue of the proposed certificates, secured by a mortgage on the existing water-works system and the extension, will create a debt of the city. If the city will thereby become indebted, the proposed action is prohibited by section 12 of article 9 of the constitution, limiting municipal indebtedness, in the aggregate, to five per centum on the taxable property of the city.

The act of the legislature under which the ordinance was passed provides that a city may build a water-works system or enlarge or extend an existing system and issue certificates of indebtedness therefor; that the entire proceeds arising from the operation of the water-works system of the city shall be paid into a fund known as the water fund, out of which the certificates are to be paid and to which they are limited; that the city may convey, by way of mortgage or deed of trust, the water-works system acquired or enlarged to secure the payment of the certificates; that whenever default is made in the payment of certificates and the default shall continue for the space of ninety days, the mortgagee or trustee may declare the whole of the principal and interest at once due and payable and proceed to foreclose, and that the water-works system shall be sold for a term of years, not exceeding fifty, to satisfy the decree, and the purchaser be let into the use, occupation and enjoyment of the same during the term of years for which it was sold. It is claimed that the certificates issued and secured upon property of the city under this act and the ordinance

will not constitute a debt and that no indebtedness will
be thereby incurred, because the holder of certificates
cannot enforce their payment out of general funds of the
city, and the only effect of the mortgage will be to insure
that the water-works will earn the money to pay for the
extension.    It is true that no action can be maintained
against the city on the certificates other than to compel
it to appropriate the water fund to their payment and
to make the city defendant in a foreclosure suit by which
its property is taken and applied to such payment.  But
it is not essential that there should be a right of action
on the certificates against the city in order to constitute
a debt where its money or property can be taken in pay-
ment.  Where one party occupies the position of creditor
and another of debtor, there is, in the common under-
standing, a debt.    The State is not liable to be sued by
its citizens upon any of its obligations, but no one would
think of saying that the State is not indebted where
it has issued bonds or certificates of indebtedness, and
where there is a legal, moral or equitable obligation to
pay.    The provision for a mortgage implies a debt, since
a mortgage cannot exist without a debt.    The mortgage
is a mere incident to a debt or obligation secured by it
and which is an essential element in a mortgage. (*Rue* v.
*Dole*, 107 Ill. 275; *Burgett* v. *Osborne*, 172 id. 227.)  It is not
essential to a debt or to a mortgage that there should
be any promise of the mortgagor to pay the debt.    The
mortgage may be merely to secure payment, and a debt
exists in many cases where there is no personal liability
and where there could be no suit at law and no personal
decree could be rendered for a deficiency.  One who pawns
or pledges his property and who will lose the property
if he does not pay, is indebted although the creditor has
nothing but the security of the property; and so, also, is
a mortgagor who is liable to lose his property if he does
not pay the money secured by the mortgage.  No one
would agree to the proposition that a city could obtain

money by mortgaging the city hall, the buildings of the fire department, or other property of the city, without a promise to pay but so as to enable the creditor to take them in satisfaction of the loan, under a statute authorizing such action, and yet not create any indebtedness of the city.    We see no difference between mortgaging the public buildings and property of the city and mortgaging its system of water-works.    The city owns an existing system of water-works, with its lands, buildings, machinery and appurtenances, and the ordinance provides for mortgaging that system to secure the certificates under the act providing for a foreclosure and sale, by which the city would be deprived of its property for a term of years, not exceeding fifty.

In addition to mortgaging the existing system, the ordinance proposes to take the income now derived from it, amounting to about $10,000 a year, and devote it to the payment of the certificates.    This is existing property and income of the city derived annually from the present system of water-works, independent of the extension and in no manner resulting from or depending upon it.    The city is to lose property in the form of established income for the purpose of paying the certificates. If the city, being indebted beyond the constitutional limit, can issue certificates payable out of that fund without creating a debt, it would be equally within its power to issue obligations by pledging the fund derived from dram-shop licenses, or licenses from hackmen, peddlers, theaters or amusements, or any other funds of the city. All of the revenues of the city, except such as would be derived from general taxation, might in that way be pledged or mortgaged for long years to come, and we apprehend that no one would be found to say that such a scheme would not be a mere evasion of the constitution.

What is said relative to mortgaging property owned by the city or pledging its existing income is not intended to apply to a mortgage purely in the nature of

a purchase money mortgage, payable wholly out of the income of property purchased or by resort to such property. This is not a case where there is no obligation of the city except the performance of a duty in the creation and management of a fund, and where the water-works, upon paying for themselves, will become the property of the city. The reasoning in *Winston* v. *Spokane,* 41 Pac. Rep. 888, cannot be applied to a case like this, and could only apply to property or· a fund which the city never had, where the property is to be paid for by its own earnings without imposing any further liability on the city.

It does not make any difference that the certificates are payable out of the special fund, if the city is the owner of the fund. All its obligations are payable out of some particular fund. The city council is required, in raising money by taxation, to make appropriations, specifying the objects and purposes for which they are made and the amount appropriated for each object and purpose. The money and appropriation raised for one purpose cannot be applied to any other, and the accounts of each fund and appropriation, and the debts and credits belonging thereto, must be kept in a separate account. The debts chargeable to a particular fund are payable only out of that fund, and it makes no difference what fund they are chargeable to or payable out of, if the fund is one which belongs to the city. (Hurd's Stat. 1899, chap. 24, art. 7, p. 282.) The section of the constitution limiting indebtedness provides that at the time of incurring any indebtedness the city shall provide for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due and to pay and discharge the principal within twenty years from the time of contracting the debt, and every indebtedness is payable from some particular fund.

The principle involved in special assessments, under which the warrants issued by a city do not constitute indebtedness of a city, cannot be applied to this case.

The city is in no way liable for their payment and never owns the fund out of which they are paid. (*Quill* v. *City of Indianapolis*, 124 Ind. 292.) The improvement, when made, becomes the property of the city, but the cost and expense fall upon the property holder. If more should be collected than will pay the warrants it is rebated to the property owners. If the warrants are not paid the remedy is confined to the property of individuals. A special assessment is a lien upon individual property and not upon property of the city, but in this case the holders of certificates would have a right to take and appropriate a pre-existing income of the city for the payment of the certificates and also to enforce payment by a sale of property of the city. The certificates would be in no sense chargeable upon the property of individuals, but solely upon the income and property of the city, including property already owned by the city.

It is said that cities have two classes of powers,—the one legislative and the other proprietary,—and we have recognized this distinction in *Wagner* v. *City of Rock Island*, 146 Ill. 139. It seems to be thought that this distinction has some influence upon the situation here, because the city, in enlarging the water-works system, is engaged in the exercise of its proprietary and business powers. The constitution makes no distinction in the nature of the power exercised with reference to contracting indebtedness, but the prohibition is against incurring indebtedness in any manner or for any purpose beyond the limit fixed.

Appellee assigns cross-errors that the court erred in not making a finding in its decree that the act of the legislature is unconstitutional and void. The court found all the facts alleged in the bill and enjoined the incurring of the proposed indebtedness. All that is required of a court in a decree is to find the facts and then pronounce such decree as the law requires, as a result of the facts found. That was done in this case, and the decree of the circuit court is affirmed. · 

*Decree affirmed.*