177 So. 747

**HARMAN v. ALABAMA COLLEGE.**

**7 Div. 483.**

Supreme Court of Alabama.

Dec. 18, 1937.

L. H. Ellis, of Columbiana, for appellant.

Wilkinson & Wilkinson and Frank A. Wilkinson, all of Birmingham, for appellee.

FOSTER, Justice.

This suit is closely related to one between the same parties reported in 234 Ala. 446, 175 So. 394, but predicated on a different claim.

Its purpose is to test the right of the Alabama College, a corporation, by its trustees to borrow $200,000 from the Federal Emergency Administration of Public Works, for the erection of a co-operative house dormitory, and the beautification of the grounds connected with it; and for that purpose to issue bonds or warrants for its repayment with interest not to exceed 4 per cent.; and to secure their payment there is to be pledged the college fees and matriculation fees to be levied by the college on students in attendance in that institution, together with its other moneys not derived from appropriations by the state to the college.

Authority to carry out the plan is based on an act of the Legislature approved September 13, 1935, p. 1064, referred to on application for rehearing in the former suit, but not made the basis of the right there sought. Under said act all state institutions are granted, respectively, the right to borrow money from federal agencies for the erection of buildings, beautification of grounds, erection and maintenance of swimming pools, and to comply with the requirements of federal agencies in reference to moneys so loaned; to issue bonds or warrants for the repayment of same and to pledge therefor fees from students to be levied by the institution and other moneys not appropriated by the state. The bonds shall not be an obligation of the state, and shall not be payable out of any moneys appropriated to the college by the state.

As was pointed out in the former suit, Alabama College is a corporation invested with the right to sue and contract, acquire, and hold real and personal property and exercise the powers of a corporation established to carry on a state educational institution of higher learning, succeeding the Alabama Girls' Industrial School, the Alabama Girls' Technical Institute, and Alabama Technical Institute and College for Women. Section 500, School Code of 1927; Act September 8, 1923, p. 255.

It is therefore the same corporation and institution treated by this court in Alabama Girls' Industrial School v. Reynolds, 143 Ala. 579, 42 So. 114; Alabama Indus-

trial School v. Addler, 144 Ala. 555, 42 So. 116, 113 Am.St.Rep. 58.

The power here undertaken to be conferred is in essence the power to incur a debt, as we will undertake to show. The act carefully provides that it shall not be the debt of the state, but does not provide that it shall not be the debt of the college corporation. Unless limited in some way, the power to borrow money ordinarily implies the power to create a debt to that extent.

Moreover, when a public corporation pledges its property, or income from its property, which is not to be derived from that which is to be purchased with the funds to be acquired, and which has not been donated to it for use in that particular form of investment, we have held it thereby undertakes to create a debt, though the contrary is asserted.

We have held that it does not create a debt when stipulated to that effect merely because there is pledged the income from the operation of new property, and there is imposed no duty or power to pay it out of revenues otherwise derived or from the proceeds of any property already belonging to it or which will come from other sources. In re Opinions of the Justices, 226 Ala. 570, 148 So. 111; Oppenheim v. Florence, 229 Ala. 50, 155 So. 859; Randall v. State ex rel. Tuskegee, 233 Ala. 446, 172 So. 277; Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332.

But we have held that if an appropriation is made to be payable annually for a definite period, and to be used in the erection of permanent structures, which will ordinarily continue intact at least during the life of such annuity, it may be presently capitalized by anticipating the annual payments so as presently to erect the structures, without thereby creating a debt. In re Opinions of the Justices, In re Acts 1927, p. 442, Making Appropriations for State Normal Schools, 220 Ala. 539, 126 So. 161; Herbert v. Perry et al., Members of Board of Revenue of Marengo County, ante, p. 71, 177 So. 561; In re Opinion of the Justices, 230 Ala. 673, 163 So. 105.

But we have consistently held that an institution without the power to incur a debt cannot for current expenses draw upon revenues to be derived in future years, which are for expenses for those years: that such an institution must so budget its operations that each year the current expenses must be paid from current revenues. Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161; Farned v. Bolding, 221 Ala. 217, 128 So. 435; Hall v. Blan, 227 Ala. 64, 148 So. 601; Turnipseed v. Blan, 226 Ala. 549 (2), 148 So. 116; Allgood v. Stallings, 197 Ala. 121, 72 So. 383.

Nor can a county which cannot incur a debt levy a special tax to build a courthouse and pledge that tax for capital presently available for that purpose, since a debt is thereby incurred. Hagan v. Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A.,N.S., 1027; Lawrence County v. Ayers, 229 Ala. 541, 158 So. 740.

Those cases are distinguishable from our recent Marengo County Case, supra, and the Normal Schools Case, supra, since in the former, Hagan v. Limestone County, 160 Ala. 544, 554, 49 So. 417, 37 L.R.A.,N.S., 1027, it is pointed out that by section 224, Const., counties undertake to make a prohibited debt by pledging or transferring its revenues, thereby imposing additional burdens upon the citizens, which whether directly or indirectly involve increased taxation. In the Normal Schools and Marengo County Cases, supra, the Legislature had made an appropriation for a certain permanent purpose, and the present use of it for that purpose could not tend to increase taxation.

We have taken the pains to point out the effect of the cases holding that a debt is attempted, though prohibited, by transferring certain resources created for a different purpose to accrue in future years, so as to obtain and presently spend cash, and, though it is expressly stipulated, that no debt is incurred. All this to show that the proceedings here involved will constitute a debt of Alabama College, when completed, since the fees so pledged do not appear to be such as are designed when they are paid for that purpose.

The college authorities owe students for whom it was created the duty to so conduct the institution that those who in future years wish to make available its facilities, and to do so pay the required fees, may have the benefit of the fees so paid by them. If they are anticipated and used to erect permanent facilities to be used by such students, we cannot say it is depriving them of their rights without due process, but there arises an obligation and duty to them to make such use of the funds as to be available for such students. If

the college authorities use the funds so derived for current operating expenses, we do not hold that it would not deprive such students of their property rights without due process as well as incur a duty to them.

■ The power here under consideration is not to be confused with the right to make temporary loans for current expenses payable out of current revenues. When such revenues are available and sufficient, but not presently in hand, provision is made, properly, without making a debt in a true sense, to anticipate such payments through short temporary loans payable during the current year and out of current revenue intended for such use. Sections 130, 136, School Code; Farned v. Bolding, supra.

But the power to draw upon the future for revenue for current purposes, when such future revenue is intended for another purpose, invokes quite a different power.

In the case of Farned v. Bolding, supra, the use of the borrowed money was for the payment of current operating expenses. There was no authority of law for such debt, or for the use of funds to be created in future years for such expenses. The court took occasion to mention section 281, School Code, not there involved, by referring to the fact that it authorized the anticipation of a special school tax for present use having an element of permanency. It furnishes an analogy to the situation here at hand, and different from the courthouse cases. But in so making present use of the funds to be created for a different purpose, though not prohibited by due process, it creates a debt, and the right to make the debt is dependent upon whether the Constitution prohibits it.

■ The general rule is that a state Legislature may authorize school organizations to incur debts for school purposes within constitutional limitations. 56 Corpus Juris, 531 et seq.

■ This would without question extend to this situation if section 213, Constitution, does not prevent. It prohibits the creation of a new debt by the state or its authority. It is said that state colleges, in fact Alabama College, cannot be sued because of section 14, Constitution, which prohibits suits against the state, since the college is a state agency. Alabama Girls' Industrial School v. Reynolds, 143 Ala. 579, 42 So. 114; Alabama Industrial School v. Addler, 144 Ala. 555, 42 So. 116, 113 Am. St.Rep. 58; Cox v. University of Alabama,

161 Ala. 639, 49 So. 814. The same was held applicable to the insane hospital. White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454.

■ But this court in Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695, held that the state could incorporate a state agency and authorize it to create debts without infringing on section 213.

And in Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774, this court held that the Legislature could create a county school board as a quasi corporation and permit it to create debts and be sued. Turk v. Monroe County Board of Education, 222 Ala. 177, 131 So. 436.

We pointed out in State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581, that it is common with the several states to set up public corporations as state agencies for public purposes and give them the right to sue, be sued, and contract debts.

■ The debts so contracted are not state debts. The right to sue them may be differentiated from the right to sue such institutions as state colleges and hospitals, purely educational or welfare organizations not of a business nature. But we see no reason why such colleges and hospitals, when incorporated, may not be given express legislative power to contract debts without thereby setting up a state debt. There is no prohibition in the Constitution. They are separate entities from the state. Their debts are not state obligations. We are not willing to deny them the right to have conferred the power to contract debts, which impose no state obligations, and deprive no one of due process. But in doing so, it must be understood that the college cannot be sued to enforce the debt nor any collateral obligation thereby arising.

In the former case, we held that the Leglislature had not attempted to confer on Alabama College (not considering the act of 1935, supra) the power to contract a debt such as here contemplated. But clearly the act of 1935 does undertake to do so, and we see no reason why it cannot as now proposed.

The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.